UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,      Cr. No. 18-20512
                  Hon. Mark A. Goldsmith

v.

MARSHALL ALDERSON,

      Defendant.
_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION SEEKING REVOCATION OF THE DETENTION ORDER (Dkt. 52)

This matter is before the Court on Defendant Marshall Alderson's motion seeking revocation of a pretrial detention order. The issue has been fully briefed, and the Court held a hearing on February 13, 2019. After careful consideration, the Court will grant Alderson's motion.

### I. BACKGROUND

On July 26, 2018, a federal grand jury indicted Alderson, charging him with one count of conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. § 846, and one count of possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. Indictment (Dkt. 1). Alderson was taken into custody about three months later. His initial appearance took place on October 24, 2018. At his detention hearing, Magistrate Judge Majzoub ultimately ordered detention, see 10/30/2018 Order (Dkt. 20), despite a recommendation from pretrial services that he be released pending trial. The magistrate judge noted that the charges against Alderson gave rise to a statutory presumption in favor of detention and opined that Alderson posed a risk of danger to the community.

### II. ANALYSIS

1

The district court having original jurisdiction over the matter reviews the magistrate judge's order of detention de novo pursuant to 18 U.S.C. § 3145.

**A.      Governing Legal Standard**

Under the Bail Reform Act, when a "judicial officer finds that there is probable cause to believe" that a defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[,]" a statutory presumption that the defendant is a flight risk and a danger to the community arises. 18 U.S.C. § 3142(e)(3)(A). This presumption is "[s]ubject to rebuttal" by a defendant. 18 U.S.C. § 3142(e)(3).

Rebutting the presumption of risk of flight and dangerousness "imposes only a 'burden of production' on the defendant, and the government retains the 'burden of persuasion.'" United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citing, inter alia, United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)). "A defendant satisfies his burden of production when he 'com[es] forward with evidence that he does not pose a danger to the community[.]'" Id. (citing Mercedes, 254 F.3d at 436) (first alteration in original). When a defendant discharges his or her production burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id. (quotation omitted). "The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." Id. (citations omitted). "To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'" Id. at 946 (quotation omitted) (alteration in original).

If the presumption is rebutted, the Government retains the "ultimate burden" "to prove that no conditions of release can reasonably assure . . . the safety of the community." Id. In determining

2

whether the Government has satisfied its burden of persuasion, the Bail Reform Act requires courts to consider the following factors:

> (1) the nature and circumstances of the offense charged[;]
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g). Consideration of these factors may not undermine the presumption of innocence. 18 U.S.C. § 3142(j).

**B.  The Government has satisfied its burden of establishing that this is a presumption case by virtue of demonstrating probable cause.**

"A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." Stone, 608 F.3d at 945 (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)). Here, an indictment charging Alderson with one count of conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. § 846, and one count of possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), was returned on July 26, 2018. The Government has thus met its burden of demonstrating that this is a presumption case.

**C.  Alderson has adduced sufficient evidence to rebut the presumption of dangerousness.**

3

To be released pending trial, Alderson must rebut the presumption that he is a danger to the community.[1]  18 U.S.C. § 3142(e)(3).  This burden of production "is not [a] heavy" one and does not require the defendant to attempt to prove that he did not commit the crime as charged. Stone, 608 F.3d at 945 (quotation omitted).

On this point, Alderson has offered evidence that, if released on supervision, a third-party custodian (his paternal aunt Debra Alderson) could supervise him in the home he owns in St. Clair Shores, Michigan.  He has also offered evidence that the manager of a company in Eastern Market, located in Detroit, Michigan, has offered him a full-time position as a meat-packing laborer.  The Court is satisfied that Alderson has produced sufficient evidence to rebut the statutory presumption of dangerousness.

**D.     The Government has not discharged its burden of persuasion demonstrating that no combination of conditions will reasonably assure the safety of the community.**

To detain a defendant pretrial on dangerousness grounds, the Government must adduce "clear and convincing evidence" of dangerousness.  United States v. Taylor, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (quoting 18 U.S.C. § 3142(f)).  Clear and convincing evidence has been defined as more than preponderance of the evidence but less than that beyond a reasonable doubt. Addington v. Texas, 441 U.S. 418 (1979).  In the context of Section 3142(f), the fact-finder must possess a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice.  United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984), aff'd, 755 F.2d 203 (1st Cir. 1985). Further, where a defendant rebuts the statutory presumption of detention, the Bail Reform Act requires that every form of release be

---

[1] The parties, as well as the magistrate judge, acknowledged that Alderson is not a flight risk. (Dkts. 16-18; 20.)  The Court agrees with the magistrate judge's reasoning on this point, and adopts her corresponding conclusion.

4

considered before pretrial detention may be ordered. United States v. Orta, 760 F.2d 887, 891 (8th Cir. 1985).

The Court considers all of these factors and concludes that the Government has not discharged its ultimate burden of demonstrating that no "condition or combination of conditions will reasonably assure . . . the safety of any other person and the community[,]" 18 U.S.C. § 3142(e)(3).

### 1. The nature and circumstances of the offenses charged

The first factor the Court must consider is the nature and circumstances of the offenses charged. 18 U.S.C. § 3142(g)(1). The charges here are undeniably serious, as Alderson's alleged crimes carry a mandatory minimum of ten years and trigger the statutory presumption of detention. 18 U.S.C. § 3142(e)(3)(A). However, Alderson need not produce evidence negating the finding of probable cause that he committed the underlying offense, nor is he expected to somehow negate the general Congressional finding that drug offenders may pose a danger to the community. United States v. Dominguez, 783 F.2d 702, 706 (7th Cir. 1986). He may "show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that 'what is true in general is not true in the particular case[.]'" Id. (quoting United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985)).

Here, the Government contends that detention is appropriate because, if released, Alderson will return to selling drugs. The Government focuses on the fact that during the one-year period between the December 5, 2016 raid on a residence not belonging to Alderson in Eastpointe – which resulted in the seizure of large quantities of drugs as well as typical tools of the drug trade – and the eventual search of Alderson's home St. Clair Shores on December 5, 2017, Alderson apparently sold drugs despite knowing he might be the target of an investigation.

However, Alderson was not charged in the immediate aftermath of the December 5, 2016 raid. Instead, the investigation carried on for another two years. The Government proffered that during the first year, telephone intercepts reveal that Alderson continued to engage, or tried to engage, in the sale of drugs through November 2017. However, it has pointed to no direct evidence of any suspected drug activity during the second year. In fact, at the initial detention hearing, the Government proffered virtually no evidence that Alderson engaged in any drug activity after federal agents raided his home on December 5, 2017. No drugs were found in Alderson's home, though agents did seize more than $30,000 and fifteen cell phones, which is at least suggestive of drug trafficking. Alderson was not arrested by federal law enforcement officials until October 24, 2018, nearly eleven months after agents executed the search warrant at Alderson's home and nearly three months after the Government obtained an indictment in this case.

The Government's failure to present any direct evidence that Alderson engaged in criminal activity during the eleven-month period leading up to his arrest and detention undercuts its position that Alderson poses an unacceptably high risk of danger to the community. Though the Government's argument is not unfounded, the Court declines to give significant weight to activity that – while concerning – is strikingly different to Alderson's conduct after law enforcement officials searched his private residence and other properties Alderson allegedly used to facilitate his unlawful dealings. The Government has not persuaded this Court that, if released, Alderson is likely to engage in conduct he has not participated in for over a year.[2]

In addition to the above, Alderson has further demonstrated that "what is true in the general case is not true" in his case by pointing out that several typical indicators of dangerousness in drug

---

[2] In ordering detention, the magistrate judge was similarly focused on Alderson's conduct during the one-year period between December 5, 2016 and December 5, 2017. In wrestling with the question of whether Alderson posed a danger to the community, the magistrate judge noted that Alderson's case presented a "dilemma," in part because the facts proffered by the Government to support its position on dangerousness were "one to two years old." (Dkt. 18.)

cases are absent here. Jessup, 757 F.2d at 384. Alderson is not a member of a gang and there is no allegation or history suggesting Alderson is affiliated with an ongoing criminal organization under RICO. Cf. United States v. Cureton, No. 12-20287, 2013 WL 4496276, at *1 (E.D. Mich. Aug. 21, 2013) (denying defendant's motion seeking release on bond where defendant was charged with one count under RICO and one count of distribution of controlled substances, noting that defendant was a member of "a violent criminal street gang commonly known as the 'Howard Boys[]'" and the "gang used violence and the threat of violence in order to control [their] territory"). The charges against Alderson contain no allegation or history suggesting Alderson committed the suspected crime by resorting to physical violence. Nor is there any allegation or history suggesting that Alderson's prior drug charges (discussed in greater detail, infra) involved the use of physical violence. There is no allegation that the charged conduct resulted in anyone's death or serious bodily injury. Lastly, no weapons or ammunition were retrieved from Alderson's home.

On these facts, Alderson has presented "'special features of his case' that take it outside 'the congressional paradigm[.]'" Stone, 608 F.3d at 946 (quotation omitted). Giving due deference to "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial[,]" id. at 945, the Court concludes that the first factor concerning the nature and circumstances of the offenses charged does not weigh in favor of detention.

   2.   **The weight of the evidence**

The second factor the Court must consider is the weight of the evidence against Alderson. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948 (citing, inter alia, Hazime,

7

762 F.2d at 37). For the reasons set forth above, the weight of the evidence regarding present and continuing dangerousness is slight. Accordingly, this factor weighs in favor of release.

### 3. History and characteristics of the defendant

The third factor requires the Court to review the history and characteristics of a defendant, which are statutorily separated into two categories.

The first category the Court must consider includes examination of Alderson's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Alderson is forty-five years old and has resided in Michigan his entire life. He comes from a large, close-knit family with significant ties to the Eastern District of Michigan. Twice-divorced and currently engaged, Alderson has several children. The eldest son resides with Alderson at the home Alderson has owned since 2013 in St. Clair Shores, Michigan. Alderson claims to have been legitimately self-employed doing home repairs and renovations for ten years, and also claims an offer of full-time on-the-books employment. Alderson is physically healthy with no history of mental illness or substance abuse disorder; his ability to work is a stabilizing factor weighing in favor of pretrial release.

Alderson's most recent conviction is for a federal drug crime he committed in 1992, when he was nineteen years old. Alderson received a sentence of sixty-five months for that offense and was later discharged from a four-year term of supervised release in January of 2001.[3] Although he has faced drug charges four additional times since then (including the current case), he was acquitted of wrongdoing in 1998, and had the charges dismissed in another incident more than

---

[3] While under supervision in that case, Alderson was tried and acquitted for possession of controlled substances.

years later, in 2009. He remains in warrant status on a 2010 case arising out of the 36th District Court and – as recommended by Pretrial Services – can and will clear that warrant if released.

On the one hand, the aforementioned conviction and outstanding warrant parallel the current charges, suggesting that Alderson was not previously deterred by his prior sentence. On the other hand, Alderson's only conviction is dated, occurring more than twenty-five years ago. Moreover, Alderson has never been convicted of a violent felony or of any gun charges. United States v. Taylor, 289 F. Supp. 2d 55, 69 (D.D.C. 2018) ("[G]iven the lack of evidence that [defendant], in fact, engaged in any act of violence, the Court cannot conclude that his criminal history discloses a propensity for violence.").

Alderson's criminal history, though old and relatively sparse, involves the same type of conduct at issue in the present case. "This, then, at least raises the specter that he might, if released, commit just the type of offense that Congress concluded poses a unique danger to the community." Taylor, 289 F. Supp. 2d at 69 (citation omitted). However, the Court will not assign significant weight to this consideration because (i) Alderson's sole conviction is dated and did not involve acts of violence; (ii) the Government has not alleged any violence in connection with the current charges; and (iii) the Government has not pointed to any unlawful conduct during the nearly eleven-month period between the December 5, 2017 raid of Alderson's home and his arrest on October 24, 2018. Id. at 70.

The second category asks "whether, at the time of the current offense or arrest, [defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B). Alderson was not. This factor weighs in favor of release.

On balance, the Court concludes that the third factor weighs in favor of release.

### 4. Nature and seriousness of the danger to any person or the community that would be posed by the defendant's release

The final factor the Court must consider is the "nature and seriousness of the danger . . . to the community that would be posed by [Alderson]'s release." 18 U.S.C. § 3142(g)(4). Consideration of this factor requires the Court to "look to more than whether or not the defendant himself has been guilty of physical violence," but also to the safety of the community as a whole. United States v. Vance, 851 F.2d 166, 169 (6th Cir. 1988).

Given the thrust of the Government's arguments at the detention hearing, the Court has already examined the risk of danger to the community in Section II.D.1, supra, concluding that that the nature and circumstances of the offense did not weigh in favor of detention. While the indictment establishes probable cause to believe that Alderson was involved in a conspiracy to distribute several particularly dangerous drugs, it bears repeating that the Government has offered no direct evidence of any suspected drug activity after November 2017.

On these facts, the Court concludes that Alderson's release would pose some risk, but not sufficient risk to favor detention.

**E.  Weighing the Bail Reform Factors**

As explained above, none of the factors weighs in favor of continued detention. There is no indication that Alderson engaged in unlawful activity after his house was raided more than one year ago. Further, the record does not reveal any history of violence by Alderson. Alderson's lone drug conviction, although serious enough to warrant a sixty-five-month sentence, occurred more than twenty-five years ago.

In addition, the Court concludes that the Government has not met its burden of establishing by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(3). To the contrary, the Court concludes that certain conditions will address any risk to the safety of the

community that Alderson's release might create. Specifically, the Court finds that home confinement, placement with a custodian, and a GPS tether will adequately address any risk.[4]

### III.   CONCLUSION

For the reasons set forth above, Defendant's Motion Seeking Revocation of the Detention Order (Dkt. 52) is **GRANTED**. Alderson shall be released on the conditions recommended in the amended Pretrial Services report dated February 13, 2019, with the following additions:

(1) Alderson will reside at his home on Downing Street in St. Clair Shores, Michigan under the supervision of a third-party custodian, Ms. Debra Alderson (his aunt), who will also reside at the same address. Alderson will inform Pretrial Services whenever he leaves the home.

(2) Alderson will submit to a GPS electronic monitoring and comply with all program requirements, including any specific directives of the Pretrial Services Officer.

(3) Alderson is not to have any contact with his co-defendants or any potential witnesses in the case.

(4) Alderson will participate in substance monitoring and, if necessary, substance treatment programs.

(5) Alderson must report in-person to Pretrial Services no less frequently than once a week.

(6) Alderson must accept the employment offer he claims to have and work at that job on a full-time basis for which verification must be provided to Pretrial Services.

**SO ORDERED.**

Dated: February 26, 2019  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

---

[4] Notably, the affidavit used to obtain the warrant to search Alderson's home indicated that investigators did not observe any drug trafficking activity there.